IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

MARK BROWN,

        Debtor.

Filed / Docketed
November 17, 2006

Case No. 06-10734-M
Chapter 12

## MEMORANDUM OPINION

The life of the bankrupt debtor is not an easy one. Almost by definition, one who seeks the protection of this Court does so in the face of a financial crisis. Oftentimes the bankruptcy system is the last, best, and only hope for such a debtor. When a debtor hires counsel to assist him or her, the debtor has the right (as does any client) to expect undivided loyalty. In addition, the bankruptcy court has the right to expect absolute candor from both the debtor and the debtor's counsel. In this case, both of these expectations were compromised. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

### Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b).[1] Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C. § 157(a). The issue presently before the Court constitutes a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).

### Findings of Fact

On June 30, 2003, Bill A. Brown and Cynthia L. Brown ("Mr. and Mrs. Brown") filed a Chapter 12 bankruptcy case ("Case No. 03-03650-M").[2] On that same day, Mark Brown ("Mark"),

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[2] *See* Case No. 03-03650-M.

their son, filed a separate Chapter 12 case ("Case No. 03-03651-M").[3]  Mark and Mr. and Mrs. Brown (collectively the "Browns") were all represented by the same attorney, James S. Matthews, Jr. ("Matthews").

Matthews filed applications to be employed as counsel for the debtors in both cases. Each contained the following provision: "Mr. Matthews understands that no payment may be received without approval of this Court, and that any fee or costs award is subject to review by this Court pursuant to 11 U.S.C. Section 328."[4]  Moreover, in each of the applications, Matthews acknowledged that the Browns had paid him a total of $3,000 "to handle litigation" prior to the filing of the bankruptcy cases and owed him fees for services previously rendered. Matthews represented that those fees would be waived "for the purposes of" the Chapter 12 cases. On the basis of these representations, the Court approved the employment of Matthews as counsel for the Browns. On July 30, 2003, schedules and statements of affairs were filed in both cases.[5]  The documents indicated that none of the debtors had made any payment to any counsel pertaining to bankruptcy matters in the year prior to filing, notwithstanding the $3,000 in payments made to Matthews.

These cases remained pending for almost a full year. A plan was never confirmed in either case. On June 22, 2004, in the face of pending motions to dismiss filed by Lonnie D. Eck, the Chapter 12 Trustee ("Eck"), Matthews moved to dismiss each of the cases, stating that "the debtors have reached settlement with their principle [sic] creditors and that settlement is more effectively

---

[3] *See* Case No. 03-03651-M.

[4] Case No. 03-03650-M, *Docket No. 14*, ¶ 5; Case No. 03-03651-M, *Docket No. 23*, ¶ 5.

[5] Case No. 03-03650-M, *Docket No. 20*; Case No. 03-03651-M, *Docket No. 17*.

accomplished by dismissal."[6] The cases were then dismissed.[7] At no time did Matthews file an application for approval of fees, or seek an order authorizing any of the Browns to make payment to him.

On August 23, 2004, Mr. and Mrs. Brown, along with Mark, executed and delivered to Matthews a promissory note in the principal amount of $30,000 (the "Note").[8] The Note provided that the total indebtedness could increase to $40,000 "if further services or costs are advanced for the primary or sole benefit of one of the Debtors."[9] The Court concludes that the Note was executed as a means of providing for payment of fees and expenses owed to Matthews for his legal representation of the Browns. The exact nature of that legal representation remains a mystery. In conjunction with the Note, the Browns executed and delivered to Matthews a security agreement, financing statement, and an Oklahoma Effective Financing Statement (hereafter collectively referred to as the "Security Agreement") upon all of their crops, whether now growing or to be grown.[10] The financing statement and the Oklahoma Effective Financing Statement were signed by Mark and his wife only, and were filed of record in the office of the Oklahoma County Clerk.

The resolution of Mark's financial woes was short-lived. On June 14, 2006, he again filed a petition for relief under Chapter 12 (the "Current Case"). Matthews filed the petition acting as his attorney. This time, schedules were not filed with the petition, and Matthews did not seek Court

---

[6] Case No. 03-03650-M, *Docket No. 160*; Case No. 03-03651, *Docket No. 147*.

[7] Case No. 03-03650-M, *Docket No. 161*; Case No. 03-03651-M, *Docket No. 148*.

[8] *Matthews Ex. 7-1 – 7-3.*

[9] *Id., 7-1.*

[10] *Matthews Ex. 7-4 – 7-10.*

approval of his representation of Mark. As a result, the Court had no knowledge of Matthews' status as a secured creditor of Mark. Matthews, on the other hand, was well aware of the problem. On June 15, 2006, one day after the Current Case was filed, Matthews authored a letter to Mark which contained the following paragraph:

> Although, I have assisted you for the purpose of providing the schedules to be filed in a timely manner, please recall that I cannot represent you in the general [bankruptcy] case (but I can do that in the pending action with FSB, Fairfax). This is because I have a secured claim which I cannot waive. I will be filing a Motion to withdraw from the general case soon.[11]

Another letter sent by Matthews to Mark on August 23, 2006, makes it clear that Matthews was aware more than sixty days prior to the filing of the Current Case that he could not act as Mark's bankruptcy counsel.[12] Nevertheless, Matthews forged ahead as counsel of record for Mark.

On June 30, 2006, a little over two weeks after the Current Case was filed, Matthews filed a motion to withdraw as Mark's counsel.[13] In the motion, Matthews admitted that he held an interest "adverse" to that of Mark's interest in the case, and alleged that he had acted as counsel to Mark "in order to allow the Debtor to file the [bankruptcy] Case in an emergency."[14] Although the motion is less than precise on this point, Matthews appears to admit that he also assisted Mark in the preparation of the bankruptcy schedules, an admission borne out by his correspondence to Mark.[15]

---

[11] *Matthews Ex. 4.*

[12] *See Matthews Ex. 3* ("I am unclear as to why you have not obtained an attorney to have you [sic] represent you in the case earlier. *We talked about the need over 60 days before the Bankruptcy was filed.*") (emphasis added).

[13] *Docket No. 19*.

[14] *Id.*

[15] *See Matthews Ex. 4* ("Although, I have assisted you for the purposes of providing the schedules to be filed in a timely manner . . . .").

4

On August 4, 2006, bankruptcy schedules were filed in the Current Case.[16] These schedules were filed by Matthews using the Court's electronic case filing system. These schedules list Matthews as a secured creditor holding a claim in the amount of $30,000. The claim is scheduled as non-contingent, liquidated, and undisputed. The schedules were signed by Mark under penalty of perjury as being true and correct. On August 15, 2006, a hearing was held on the motion to withdraw, and the motion was granted.[17]

The Current Case did not result in a successful reorganization. First State Bank of Fairfax ("Bank"), Mark's principal secured creditor, obtained relief from the automatic stay on August 18, 2006.[18] On July 26, 2006, Eck filed a motion to dismiss the case, which was granted after a hearing held on September 5, 2006.[19]

Mark continued to file pleadings in the Current Case after Matthews withdrew as his counsel. On August 18, 2006, a pleading entitled "Debtor's Objection to Trustee' [sic] Motion to Dismiss" (the "Objection") was filed.[20] The pleading was signed by Mark allegedly acting *pro se*. Matthews admittedly drafted the Objection without disclosing this fact to the Court. On August 28, 2006, a pleading entitled "Debtor's Motion and Brief to Reconsider and For New Trial as to Order Granting Motion for Relief From Stay" (the "Motion to Reconsider") was filed.[21] This pleading was also

---

[16] *Docket No. 31*.

[17] *See Docket No. 33*.

[18] *Docket No. 35*.

[19] *See Docket No. 42*. The order dismissing the case was entered on September 14, 2006. *See Docket No. 44*.

[20] *See Docket No. 36*.

[21] *See Docket No. 38*.

drafted by Matthews. The Motion to Reconsider contains detailed statements of fact, citations to legal authority, and moderately sophisticated legal analysis. Once again, the pleading was signed by Mark apparently acting *pro se*. Nothing on the face of the Motion to Reconsider discloses Matthews's involvement in its preparation.

On September 13, 2006, this Court entered its "Order Setting Hearing and Directing James S. Matthews, Jr. to Appear" (the "Order").[22] In the Order, the Court raised the issue regarding potential "ghostwriting" of pleadings by Matthews and directed Matthews to appear in court to respond to the Court's concerns. Matthews submitted a written response and brief regarding the Court's concerns.[23] In his response, Matthews admitted preparation of the pleadings at issue, but contended that his conduct was not improper. At the hearing, Matthews testified and submitted documentary evidence regarding his conduct. Eck also appeared and questioned Matthews in great detail regarding his potential conflict of interest in representing Mark, as well as Matthews's conduct in authoring the Objection and Motion to Reconsider.

## Conclusions of Law

### *Matthews as Counsel for Mark – The Conflict of Interest*

Section 327(a) states in relevant part that "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this

---

[22] *See Docket No. 43.*

[23] *See Docket Nos. 50 and 51.*

title."[24] The same prohibitions apply to debtors in Chapter 12 cases.[25] The United States Court of Appeals for the Tenth Circuit has held that

> [t]he reasons why counsel to a debtor in possession must meet the high standards of undivided loyalty established in § 327(a) are explained in *In re McKinney Ranch Assoc.*, 62 B.R. 249 (Bankr.C.D.Cal.1986).
>
>> It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. <u>The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict</u>. . . .
>
> *Id*. at 254.
>
>> The policy behind disqualification for representing potentially conflicting interests provides the key to its extent. <u>The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate. The representation of any such party disqualifies counsel from representing a debtor. Any more remote potential conflict should not result in disqualification</u>.
>
> *Id.* at 255 (footnote omitted).[26]

Boiled down to its essence, the rule is both clear and simple: attorneys who are creditors of Chapter 12 debtors may not act as their counsel.

By his own admission, Matthews was a creditor, which prevented him from being a "disinterested person" under § 327(a). Notwithstanding the direct statutory prohibition, Matthews went forward with his representation of Mark and filed the Current Case. The facts of this case

---

[24] § 327(a).

[25] *See* § 1203.

[26] *Interwest Bus. Equip., Inc. v. U.S. Trustee (In re Interwest Bus. Equip., Inc.),* 23 F.3d 311, 316–317 (10th Cir. 1994) (emphasis added).

7

illustrate the problems inherent in such a situation. Matthews has a secured claim that may be subject to avoidance as a preference or a fraudulent transfer.[27] If Matthews's lien were avoided, Mark would have had additional unencumbered property available for use as part of his reorganization plans. The individual who would normally advise a debtor on whether a preference or fraudulent transfer existed would be debtor's counsel, who, in this case, was the ***holder*** of the claim at issue. Matthews was in no position to advise Mark as to the validity of the Note and Security Agreement. More directly, Matthews was in no position to act as Mark's counsel in this bankruptcy case, and the record indicates that Matthews knew this when he filed the case.

### *Attorney's Fees and the Note*

In order for professional fees to be paid to counsel for a Chapter 12 debtor, the bankruptcy court must review and approve those fees.[28] As a corollary, there are no fees owed in Chapter 12 cases unless and until the fees are awarded by the court.[29] Counsel may not circumvent the requirements of § 330(a)(4)(B) by making "side deals" with debtors to provide for payment of fees without court approval.[30]

---

[27] *See* §§ 547 and 548.

[28] *See* § 330(a)(4)(B) ("In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."); *see also Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004).

[29] *See Jensen v. Gantz (In re Gantz)*, 209 B.R. 999, 1002 (10th Cir. BAP 1997) (In a Chapter 13 case, "[o]nly the amount [of attorney's fees] awarded by the trial court was collectible: the remainder was never due.").

[30] *See In re Wyant*, 217 B.R. 585, 588 (Bankr. D. Neb. 1998) (In a Chapter 13 case, court refused to confirm plan which provided that debtor would pay directly any attorney's fees not approved by the court, holding that "attorney fees may be paid to debtor's counsel only if approved by the court."); *accord*, *In re Michels*, 2004 WL 1718074 (Bankr. N.D. Iowa 2004)

At the time Matthews filed Case No. 03-03650-M and Case No. 03-03651-M, Matthews was an unsecured creditor of the Browns. The exact amount of that debt has never been disclosed. As a condition of being appointed as counsel in Case No. 03-03650-M and Case No. 03-03651-M, Matthews agreed to waive this claim against the Browns, at least for purposes of those cases. When he filed the applications to be employed in Case No. 03-03650-M and Case No. 03-03651-M, Matthews recognized "that no payment may be received without approval of this Court, and that any fee or costs award is subject to review by this Court pursuant to 11 U.S.C. Section 328."[31] Matthews neither requested nor obtained Court approval for the payment of any attorney's fees or expenses in those cases. Notwithstanding these facts, shortly after Case No. 03-03650-M and Case No. 03-03651-M were dismissed, the Browns executed the Note and Security Agreement. The record does not disclose what services were purportedly paid for under the Note. If any of the sums due under the Note are for fees and expenses incurred in Case No. 03-03650-M and/or Case No. 03-03651-M, there is no liability for such fees, as Court approval for the same was never sought or obtained.

The record is also unclear as to whether Matthews has received any payment for services he rendered to Mark in the Current Case prior to Matthews's withdrawal. If any such fees have been paid, they have been paid without Court approval and are subject to disgorgement. As part of its order, the Court will require Matthews to state whether any amounts purportedly due under the Note are for fees incurred in connection with Case No. 03-03650-M, Case No. 03-03651-M, or the Current Case. In addition, Matthews must disclose whether he has been paid any sums from any source in connection with the services he has provided to the debtors in those cases.

---

(Chapter 12 case).

[31] Case No. 03-03650-M, Docket No. 14, ¶ 5; Case No. 03-03651-M, Docket No. 23, ¶ 5.

*Ghostwriting*[32]

Matthews admits that he drafted both the Objection and the Motion to Reconsider for Mark's signature. He also admits that he took no steps to insure that his involvement in the drafting of those pleadings was disclosed to the Court. The question is whether this conduct was improper and, if so, what should be done about it.

> Ghostwriting is a practice which has been met with universal disfavor in the federal courts.
>
> The requirements of Fed.R.Bankr P. 9011 follow those of Fed.R.Civ.P. 11 applicable in federal civil litigation. The required signature is a certification that, according to the best of the signer's knowledge, information and belief, formed after reasonable inquiry, the pleading is not being presented for an improper purpose, its legal contentions are warranted by existing law and the factual allegations have evidentiary support. Fed.R.Bankr.P. 9011(b); Fed.R.Civ.P. 11(b). The signature determines who is responsible for the accuracy of the allegations in the pleading. In some cases, the signature also determines the standard to be applied in determining the allegations in the pleading. Pleadings prepared by lay persons without counsel (*pro se* pleadings) are interpreted more liberally than those prepared by counsel. For example, claims asserted by a *pro se* party cannot be dismissed for legal insufficiency unless it appears that the claimant can prove no set of facts which would entitle the claimant to relief. *Pro se* pleadings are also granted a degree of indulgence under Fed.R.Civ.P. 11 not extended to those drafted by attorneys.
>
> While it is true that neither Fed.R.Bankr.P. 9011, nor its counterpart Fed.R.Civ.P. 11, specifically address the situation where an attorney prepares pleadings for a party who will otherwise appear unrepresented in the litigation, many courts in this district, and elsewhere, disapprove of the practice known as ghostwriting. These opinions highlight the duties of attorneys, as officers of the court, to be candid and honest with the tribunal before which they appear. When an attorney has the client sign a pleading that the attorney prepared, the attorney creates the impression that the client drafted the pleading. This violates both Rule 11 and the duty of honesty and candor to the court. In addition, the situation "places the opposing party at an unfair disadvantage" and "interferes with the efficient administration of justice." According to these decisions, ghostwriting is sanctionable under Rule 11 and as contempt of

---

[32] For the second time in less than a year, the Court is called upon to address the issue of "ghostwriting." The Court addressed ghostwriting as a violation of Rule 9011 in a recently published opinion, *In re West*, 338 B.R. 906 (Bankr. N.D. Okla. 2006).

court.[33]

The United States Court of Appeals for the Tenth Circuit has condemned the practice of ghostwriting. In *Duran v. Carris*,[34] the court held that "an attorney must refuse to provide ghostwriting assistance unless the client specifically commits herself to disclosing the attorney's assistance to the court upon filing."[35] Other courts in this circuit have also condemned the practice,[36] as has this Court.[37]

Matthews offers the following arguments in support of his conduct:

1. The drafting of the Objection and Motion to Reconsider did not amount to ghostwriting because "[t]he cases reviewed at least implies [sic] that the prohibition against ghostwriting applies to an attorney client relationship;"[38]

2. The preparation of the Objection and Motion to Reconsider did not constitute

---

[33] *In re Merriam*, 250 B.R. 724, 733 (Bankr. D. Colo. 2000) (citations omitted).

[34] *See Duran v. Carris*, 238 F.3d 1268, 1271-1273 (10th Cir. 2001).

[35] *Id.* at 1273 (citation omitted).

[36] *See Wesley v. Don Stein Buick, Inc.*, 987 F.Supp. 884, 887 (D. Kan. 1997) ("Both the court and the parties, moreover, have a legitimate concern that an attorney who substantially participates in a case at least be identified and recognize the possibility that he or she may be required to enter appearance as counsel of record and thereby accept accountability for his or her participation, pursuant to Rule 11 and the rules of professional conduct applicable to attorneys."); *see also Johnson v. Bd. of County Comm'rs*, 868 F.Supp. 1226, 1232 (D. Colo. 1994), *aff'd on other grounds*, 85 F.3d 489 (10th Cir. 1996) ("Having a litigant appear to be *pro se* when in truth an attorney is authoring pleadings and necessarily guiding the course of the litigation with an unseen hand is ingenuous to say the least; it is far below the level of candor which must be met by members of the bar.").

[37] *In re West*, 338 B.R. 906 (Bankr. N.D. Okla. 2006).

[38] *Brief in Support of Response to Order Directing Appearance* at 7, Docket No. 51.

    "substantial assistance" for which disclosure was required;[39]

 3. Matthews's conduct was justified under the circumstances;[40] and

 4. There is no rule which clearly prohibits ghostwriting, and Matthews had never considered the issue before.[41]

The Court is not persuaded.

*Necessity of an Attorney/Client Relationship*

At the time Matthews prepared the Objection and Motion to Reconsider, he was no longer the attorney of record for Mark. Matthews takes the position that since he was not Mark's attorney when he authored the documents in question, he was not actually "ghostwriting." Matthews compares the situation to one where counsel for a creditor, acting on the creditor's behalf, drafts provisions to be inserted in a plan. Since counsel in those situations are not normally attributed with authoring credits, Matthews contends that he should not be penalized here for failing to reveal his involvement.

The argument is flawed. Initially, the extent of the attorney-client relationship between Matthews and Mark is not fully developed on the record presently before the Court. On the one hand, we know that Matthews had withdrawn as counsel for Mark, believed he was no longer acting as counsel for Mark, and told Mark to obtain other counsel. On the other hand, we know that Matthews had represented Mark and continued to represent Mark in litigation against the Bank. We know, by Matthews's own admission, that the pleadings which he prepared for Mark's signature

---

[39] *Id.* at 9.

[40] *Id.* at 9 – 11.

[41] *Id.* at 10.

were similar in content and quality to what he would have prepared had he in his own mind been acting as Mark's counsel.  What we do not know is whether Mark thought that Matthews was acting as his counsel.

The letters which Matthews sent to Mark concurrently with the drafting of the Objection and Motion to Reconsider are ambiguous on this issue.  In the August 17, 2006, letter, Matthews informed Mark that he was "ready to discuss the objection [to the motion to dismiss] with either you or your new attorney.  As I told you before, August 18, 2006 is the last day to file the objection.  We can file the objection in your name pro se if you would like."[42]  In the letter which Matthews sent to Mark on August 23, 2006, Matthews advised Mark that Matthews could not appear for Mark at the hearing on Eck's motion to dismiss the case.  Moreover, Matthews informed Mark that "I will have discussions with you or your attorney, but you are reminded I have an adverse interest suggesting that my evaluation and suggestions must be evaluated in light of my secured debt owed by you and Bill [Brown, Mark's father]."[43]  Neither of these letters contain a statement that Matthews is not acting as Mark's attorney.  Notwithstanding Matthews's testimony in this regard, it is conceivable that Mark treated the advice he received from Matthews as if it were advice from his own counsel.  Only Mark knows for sure, and he did not testify.  As a result of this ambiguity, the Court cannot accept Matthews's position that he had no attorney-client relationship with Mark at the time the Objection and Motion to Reconsider were filed.

The analogy made by Matthews that the Objection and Motion to Reconsider were similar to plan provisions drafted by a creditor's counsel and given to a debtor's counsel is unpersuasive.

---

[42] *Matthews Ex. 2*.

[43] *Matthews Ex. 3*.

These were not pleadings that one would expect a creditor's counsel to draft. They inure to the benefit of the debtor. Moreover, although most ghostwriting cases involve situations where the ghostwriter does not dispute that he or she is treating the party for whom they are ghostwriting as a client, the cases do not hinge upon that fact. The pronouncement of the United States Court of Appeals for the Tenth Circuit could not be more clear: "<u>any</u> ghostwriting of an otherwise pro se brief must be acknowledged by the signature of the attorney involved."[44] This Court will not endorse a rule which would state that counsel need disclose authorship of pleadings only if counsel considers himself to be acting as counsel for the party for whom the ghostwriting services were performed.

*Substantial Assistance*

Matthews next argues that his involvement in preparation of the Objection and Motion to Reconsider did not rise to the level of substantial assistance required by the United States Court of Appeals for the Tenth Circuit in *Duran v. Carris*.[45] This Court has no difficulty in finding that the drafting of the Objection and Motion to Reconsider constitutes "substantial assistance" under the auspices of *Carris*. The pleading at issue in *Carris* was an appellate brief written by the party's "former attorney." The Motion to Reconsider is in the form of a brief. It contains legal analysis and citation to legal authority. The Objection, while containing no citation to legal authority, seeks specific relief: namely, denial of a pending motion to dismiss the case. These pleadings were drafted in order to persuade the Court to take a specific course of action. They were meant to influence the case. The Court has no evidence that Mark had the ability to independently prepare these

---

[44] *Duran v. Carris,* 238 F.3d 1268, 1273 (10th Cir. 2001) (emphasis added).

[45] *Id.*

documents, or that he was the architect of the strategy behind them. The Court is convinced that, absent the assistance of Matthews, Mark could not have prepared these pleadings. Assistance which results in the creation of pleadings is "substantial assistance," the protestations of Matthews notwithstanding.

*Justifiable Conduct/Lack of Precedent*

Matthews argues that his conduct should be excused because the issue of ghostwriting is an issue rarely considered by counsel, and one never previously considered by Matthews. Put another way, Matthews contends that he acted in good faith in secretly authoring the Objection and Motion to Reconsider, and that his good faith excuses his conduct. He offers various arguments in support of his position, none of which resonate with the Court.

While the Court is willing to accept Matthews' statement that he was personally ignorant of the prohibition against ghostwriting, the Court is unwilling to find such ignorance justified. The prohibition against ghostwriting is well established in this circuit and has been the subject of published opinions by the Tenth Circuit Court of Appeals, various district courts, and this Court. All of those cases are readily available; indeed, this Court has an index of its published opinions available free of charge on its website. A cursory review of the law would have revealed the distaste of the courts for ghostwriting.

Matthews also contends that there should be no consequences for his conduct because at least one academic believes that the prohibition against ghostwriting is inappropriate.[46] While the views of Professor Goldschmidt upon which Matthews relies are interesting, they are not the law in this

---

[46] *See* Goldschmidt, Jona, "In Defense of Ghostwriting," 29 *Fordham Urb. L.J.* 1145 (2002). In his brief, Matthews refers to "Professor Goldsmith." The Court presumes this to be a typographical error.

circuit. Moreover, this Court finds the rationale used by our Court of Appeals in *Carris* to be far more persuasive. In any event, *Carris* is binding authority in this circuit; the pronouncements of Professor Goldschmidt are not.

The Court also rejects the position that Matthews's conduct should be excused because a cursory review of the Objection and Motion to Reconsider should have made it plain that someone other than Mark wrote those pleadings. Matthews is partially correct. The similarity in style and typeface were strong indicators that Matthews authored the Objection and Motion to Reconsider. Such circumstantial evidence is not a substitute for the disclosure required under *Carris* and its progeny. The *Carris* decision and its progeny have made the rule in this circuit clear: if an attorney writes a pleading, he or she has a duty to make sure that the Court knows he or she wrote it. The Court is not required to play a game of "catch-me-if-you-can" with a ghostwriter. All counsel owe a duty of candor to every court in which they appear.[47] Inherent in that duty is the requirement that counsel disclose his or her involvement in the case. The fact that Matthews chose not to disguise his ghostwriting is not a substitute for disclosure of his authoring of the Objection and Motion to Reconsider.

## Conclusion

The Court concludes that Matthews was disqualified from acting as counsel for Mark in this case and knew or should have known that fact at the time the case was filed. The Court also finds that Matthews engaged in the ghostwriting of pleadings in this case, and that such conduct was improper. Matthews is hereby publicly admonished for his misconduct. Given Matthews'

---

[47] *See* 5 Okla. Stat. Ann. Ch. 1, App. 3-A, Rule 3.3(a)(1) (Oklahoma Rule of Professional Conduct 3.3(a)(1)) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal."); *see also In re Merriam*, 250 B.R. 724, 733 (Bankr. D. Colo. 2000).

statements that he will never engage in such conduct in the future, the Court declines to enter an award of additional sanctions at this time. Should Matthews forget his promise, and ghostwrite pleadings in the future, the Court will not be nearly as tolerant. In addition, Matthews shall, within 14 days of the date of this Memorandum Opinion, disclose to the Court whether any amounts purportedly due under the Note are for fees incurred in connection with Case No. 03-03650-M, Case No. 03-03651-M, or the Current Case. In addition, Matthews must disclose whether he has been paid any sums from any other source in connection with the services he has provided to the debtors in those cases. Upon receipt of those disclosures, the Court will issue further orders or set the matter for further proceedings should the Court deem the same to be necessary.

Counsel should not expect that every attorney gets "one free bite" at the apple of ghostwriting. The bankruptcy rules provide that

> [a] judge may regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, Official Forms, or the local rules of the district unless the alleged violator has been furnished in the particular case with actual notice of the requirement.[48]

The Court is not convinced that this rule would prohibit it from sanctioning future ghostwriters. However, the publication of this opinion, together with the prior opinions of the United States Court of Appeals for the Tenth Circuit and this Court, can leave no misunderstanding regarding the Court's view that ghostwriting is a practice that will not be tolerated.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

---

[48] Fed. R. Bankr. P. 9029(b).

Dated this 17th day of November, 2006.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2006, I mailed by first-class United States mail a true and correct copy of the foregoing Memorandum Opinion to the party listed below:

Mark Brown
767 West Maple
Fairfax, OK 74637

*/s/ Judy Johnson*

4715.6