**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN RE:**<br><br>**BILL BROWN and CYNTHIA BROWN,**<br><br>Debtors. | **Filed / Docketed<br>June 29, 2007**<br><br>**Case No. 03-03650-M**<br>**Chapter 12** |
| **IN RE:**<br><br>**MARK BROWN,**<br><br>Debtor. | **Case No. 03-03651-M**<br>**Chapter 12** |
| **IN RE:**<br><br>**MARK BROWN,**<br><br>Debtor. | **Case No. 06-10734-M**<br>**Chapter 12** |

### MEMORANDUM OPINION

If a tree falls in the forest and no one hears it, does it make a sound?  This question, which has been with us for centuries, is the bane of most freshman philosophy students.  There is an analogous question of bankruptcy law which must be answered today—if counsel, whose fees are subject to court approval, performs services for a debtor and fails to secure court approval of the fees for those services, is he or she owed any money?  Having given the affected attorney and other parties in interest an opportunity to respond to this question, the following findings of fact and conclusions of law are entered pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

**Findings of Fact**

***The 2003 Cases***

James S. Matthews, Jr. ("Matthews") is an attorney admitted to practice law in the Northern District of Oklahoma and the state courts of the State of Oklahoma. He is no stranger to this Court. Matthews previously represented Mark Brown in Case No. 03-03651-M[1] (the "Mark Brown '03 Case") and Mark's parents, Bill and Cynthia Brown, in Case No. 03-03650-M[2] (the "Bill Brown Case") (collectively the "2003 Cases"). The 2003 Cases were filed under Chapter 12 of the United States Bankruptcy Code. Although there were several creditors scheduled in the 2003 Cases, almost all of the contested litigation in the 2003 Cases involved the First State Bank (the "Bank"), located in Fairfax, Oklahoma. The Bank was the primary operating lender for the debtors. In many ways, the 2003 Cases had the earmarks of a classic single-creditor case.

Pursuant to Rule 2016(b)[3] and § 329(a),[4] on June 30, 2003, Matthews filed a Disclosure of Compensation of Attorney for Debtor in each of the 2003 Cases, setting forth that he agreed to

---

[1] Case No. 03-03651-M (*In re Mark Brown, Debtor*) was filed in the United States Bankruptcy Court for the Northern District of Oklahoma on June 30, 2003. The case was dismissed on June 23, 2004. A Final Decree was issued on December 30, 2004. Reopening of the case is unnecessary in order for the Court to enter its findings of fact, conclusions of law, and judgment in the case. *See infra* note 38 and accompanying text.

[2] Case No. 03-03650-M (*In re Bill and Cynthia Brown, Debtors*) was filed in the United States Bankruptcy Court for the Northern District of Oklahoma on June 30, 2003. The case was dismissed on June 23, 2004. The Final Decree was issued on December 30, 2004. Reopening of the case is unnecessary in order for the Court to enter its findings of fact, conclusions of law, and judgment in the case. *See infra* note 38 and accompanying text.

[3] Unless otherwise noted, all references to "Rules" are to the Federal Rules of Bankruptcy Procedure.

[4] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

accept $125 per hour, plus expenses, for his services, and that prior to the filing of these statements he had been paid nothing for services rendered or to be rendered on behalf of the debtors in contemplation of or in connection with the bankruptcy cases.[5]  Those statements were never amended.  Matthews also filed applications to appoint himself as attorney in both cases.[6]  Those applications set forth that Matthews had previously represented the respective debtors in state court litigation, and that Matthews was an unsecured claimant in each case, but that he "agreed to waive such claim for the purpose of this Chapter 12 proceeding only."   The applications disclose that Matthews was paid $1,000 in the Mark Brown '03 Case and $2,000 in the Bill Brown Case to handle litigation prior to the bankruptcy filing and that those funds were consumed or used prior to filing. Both applications include an affidavit by Matthews containing the statements:

> 3.  I have agreed to handle the case and related litigation at the hourly rate of $125.00 per hour, plus expenses;
>
> 4.  I understand that no payment may be received without approval of the Court, and that any fee or costs [request] is subject to review by this Court pursuant to 11 U.S.C. Section 328[.]

The Court then entered orders in both cases appointing Matthews "as attorney for the debtor [and] the estate, at the rate of $125.00 per hour plus reasonable expenses, subject to review for reasonableness or other cause, prior to approval or payment."[7]

Both cases were eventually dismissed on the motion of the debtors.[8]  The orders dismissing

---

[5]  Case No. 03-03650-M, *Docket No. 2*; Case No. 03-03651-M, *Docket No. 2.*

[6]  Case No. 03-03650-M, *Docket No. 14*; Case No. 03-03651-M, *Docket No. 23.*

[7]  Case No. 03-03650-M, *Docket No. 15*; Case No. 03-03651-M, *Docket No. 24.*

[8]  Case No. 03-03650-M, *Docket No. 160*; Case No. 03-03651-M, *Docket No. 147.*  The Court notes that the motions to dismiss were filed on the same day as scheduled hearings on motions to dismiss filed by the Bank.  In both cases, the debtors indicated that they sought

the 2003 Cases held that they "should be and hereby [are] dismissed with jurisdiction retained by the Court to conclude administration of the estates."[9]   Matthews never filed an application for approval of fees in either of the 2003 Cases, nor did he seek an order authorizing the debtors to make payment to him.[10]

*The Invoices*

During the course of his representation, Matthews issued the following invoices for legal services to the Browns:[11]

| Summary of Invoices | | | | |
|---|---|---|---|---|
| **Invoice Number** | **Benefitting Party** | **Services For** | **Time Frame** | **Amount Billed** |
| 10379 | Bill & Cynthia Brown | Bill & Cynthia Brown Bankruptcy Case No. 03-03650-M; (includes combined charges for Mark Brown 2003 Chpt. 12) | 06/26/2003 – 04/09/2004 | $21,859.31 |
| 122 | Mark Brown | State court litigation | 11/27/2005 – 06/10/2006 | $3,300.00 |

dismissal "for the reason that the debtor[s] [have] reached settlement with their principle [sic] creditors and that settlement is more effectively accomplished by dismissal."

  [9]  Case No. 03-03650-M, *Docket No. 161*; Case No. 03-03651-M, *Docket No. 148*.

  [10]  This finding was made in a Memorandum Opinion filed in Case No. 06-10734-M, *Docket No. 59*, slip op. at 3, 354 B.R. 535, 537 (Bankr. N.D. Okla. 2006). That Opinion primarily addressed Matthews's ghostwriting of pleadings in the Mark Brown '06 Case. It also ordered Matthews to disclose any compensation he had either billed or received from the debtors in connection with either the Mark Brown '06 Case or the 2003 Cases. Unless otherwise noted, all further references to the Court docket refer to Case No. 06-10734-M.

  [11]  This information was ultimately disclosed by Matthews in response to an Order from the Court that Matthews disclose whether he had billed or received any funds from the debtors with respect to the 2003 Cases.  *See* James S. Matthews Response to Court's Sua Sponte Review of Payments Made and Memorandum in Support, *Docket No. 95*, Exhibit A.

4

| Summary of Invoices | | | | |
|---|---|---|---|---|
| 10316P | Bill & Cynthia Brown | Non bankruptcy work | 05/05/2003 – 06/25/2003 | $2,940.39 |
| 10319P | Mark Brown | State court litigation | 06/07/2003 – 06/16/2003 | $1,120.00 |
| 10317A | Mark Brown | Mark Brown Bankruptcy Case No. 03-03651-M | 06/30/2003 – 04/09/2004 | $2,215.40 |
| 10375A | Mark Brown | Mark Brown Bankruptcy Case No. 03-03651-M | 04/25/2004 – 06/15/2004 | $600.00 |
| 10381 | Bill & Cynthia Brown | Bill & Cynthia Brown Bankruptcy Case No. 03-03650-M; (includes combined charges for Mark Brown) | 04/23/2004 – 09/05/2004 | $7,562.18 |
| | Mark Brown | State court litigation | 09/06/2006 – 02/23/2007 | $2,720.00 |
| 10316P | Bill & Cynthia Brown | Additional charges from state court litigation from May 8, 2006 – Jan. 18, 2007 | 05/05/2003 – 06/25/2003 | $1,616.00 |

This summary of the invoices reveals that Matthews billed Bill and Cynthia Brown $21,859.31 plus $7,562.18, for a total of $29,421.49, for legal work associated with the 2003 Cases.  In addition, Matthews billed Mark Brown $2,215.40 plus $600, for a total of $2,815.40, for legal work associated with the Mark Brown '03 Case.

*The Promissory Note*

Matthews combined all of the invoices, which included charges for both bankruptcy and non-bankruptcy work, in a $30,000 promissory note effective July 1, 2004 (the "Promissory Note").[12] This Promissory Note reduced the outstanding amount of all invoices, and was issued to Matthews

---

[12]  Stipulation of Facts, *Docket No. 94, ¶ 29.*

by Bill and Cynthia Brown and Mark Brown.   According to Matthews, the Promissory Note "represents a liquidated amount of all services and costs through August 23, 2004, including pre-petition work on state litigation, work performed during the two preceding bankruptcy cases [referring to the 2003 Cases], pre-petition work relating to potential bankruptcy, and work after dismissal in resolving settlement with the principle [sic] creditors."[13]  Matthews also represented that "[t]he work and costs which produced the note balance was primarily the product of work and costs arising from the two preceding bankruptcies."[14]  In conjunction with the Promissory Note, Bill, Cynthia, Mark, and Heather Brown, Mark's wife, collectively granted a security interest to Matthews in the Browns' crops.  The security agreement referenced the Promissory Note obligation of $30,000.[15]

*The Payments*

Over the course of their relationship, the Browns made the following payments for legal fees and costs to Matthews:

---

[13]  Response to November 17th, 2006, Judgment, *Docket No. 72*.

[14]  *Id.*  Matthews did not provide the Court with any means of determining what, if any, portion of the Promissory Note relates to services performed in the state-court litigation.  In the absence of evidence to the contrary, the Court finds that the Promissory Note represents sums due and owing to Matthews for attorney fees related to the 2003 Cases.

[15]  A UCC-1 Financing Statement was filed on September 8, 2004, with the Oklahoma County Clerk on the interest of Mark Brown and Heather Brown in such collateral.  On September 3, 2004, a UCC-1 Financing Statement was filed of record with the Oklahoma County Clerk perfecting the security interest of Matthews in the crops of Bill Brown and Cynthia Brown. Subsequently, on January 18, 2007, a termination statement was filed with the Oklahoma Secretary of State terminating the perfected security interest in the crops of Bill and Cynthia Brown and Mark and Heather Brown. Stipulation of Facts, *Docket No. 94, ¶ 14–16.*

| Payments made to Matthews | | |
|---|---|---|
| **Source of Payment** | **Date** | **Amount** |
| Bill Brown | 05/06/2003 | $1,000.00 |
| Mark Brown | 06/10/2003 | $1,000.00 |
| Bill Brown | 06/30/2003 | $1,000.00 |
| Bill Brown | 07/07/2004 | $2,500.00 |
| Bill Brown | 11/19/2004 | $2,149.63[16] |
| Bill Brown | 01/13/2005 | $1,700.00 |
| Bill Brown | 11/29/2005 | $4,348.08 |
| Mark Brown | 06/14/2006 | $460.00[17] |

The payments received by Matthews in 2003 appear to be the funds that were disclosed in the employment applications filed by Matthews in the 2003 Cases, totaling $3,000. According to the employment applications, those funds were applied toward litigation conducted prior to the bankruptcy filings. The remaining $11,157.71 was received post-petition by Matthews. Matthews never disclosed the receipt of these funds to the Court until ordered to do so, nor did he provide the Court with an accounting of how these payments were allocated towards the various invoices.

---

[16] This payment was in the form of a check made payable to debtors Bill Brown and Mark Brown from Johnston Barge Terminal in Tulsa, Oklahoma, endorsed for payment to Matthews. *See Stipulation of Facts, Docket No. 94, ¶ 12.*

[17] Response, *Docket No. 72*, Question 2(b). This contradicts the amount reported in the Stipulation of Facts, *Docket No. 94, ¶ 13*, and the Response, *Docket No. 95*, at 12, which report the amount of this payment to be $440. For purposes of this Opinion, the Court finds the correct amount to be $460. These funds were applied toward the filing fee in Case No. 06-10734-M and other court costs, and were not retained by Matthews as compensation. Therefore, the $460 payment from Mark Brown will be treated separately *infra*.

7

*The Mark Brown '06 Case*

On June 14, 2006, Mark Brown filed a second petition under Chapter 12 of the United States Bankruptcy Code (the "Mark Brown '06 Case").[18]  Matthews filed the petition on Mark Brown's behalf.  He also filed a Disclosure of Compensation of Attorney for Debtor, stating that he had agreed to accept $160 per hour for legal services rendered or to be rendered on behalf of Mark Brown in contemplation of or in connection with the case, and representing that he had not received any compensation for such services within one year of filing the petition.[19]  Although Matthews never sought to be employed as Mark Brown's attorney under § 327, he nonetheless filed a motion to withdraw as his counsel due to his status as a prepetition secured creditor of Mark Brown, holding a debt of $30,000 secured by all crops of Mark Brown and two unnamed codebtors.[20]  The source of the debt was not disclosed to the Court.[21]  The motion to withdraw acknowledged that Matthews held an adverse interest to Mark Brown, and that Matthews could not proceed as his attorney.  The Court agreed and subsequently granted Matthews's request.[22]

Pursuant to a separate Application, the Court appointed Matthews as special counsel to represent Mark Brown in an adversary proceeding pending in the Mark Brown '06 Case.[23]  That

---

[18]  Case No. 06-10734-M (*In re Mark Brown, Debtor*).

[19]  *Docket No. 14.*

[20]  *Docket No. 19.*

[21]  It was later disclosed that Mark Brown's debt to Matthews stemmed from the Promissory Note, and the unnamed codebtors were Bill and Cynthia Brown.

[22]  Order Allowing Withdrawal of Counsel, *Docket No. 33*.

[23]  *See* Application to Appoint James S. Matthews, Jr. as Special Attorney for Mark Brown, *Docket No. 20*; Order Granting Application to Employ, *Docket No. 34*.

Application represented that Matthews was a secured claimant of Mark Brown, but that Matthews held no adverse interest which would prevent him from serving as counsel in the adversary proceeding.  Once again, the source of the secured debt to Matthews was not disclosed to the Court. In an affidavit attached to the Application, Matthews averred that "I understand that no payment may be received without approval of the Court, and that any fee or costs request is subject to review by this Court pursuant to 11 U.S.C. Section 328."[24]

*Ghostwriting*

After Matthews withdrew as counsel for the debtor in the Mark Brown '06 Case, the debtor continued to file pleadings, allegedly acting *pro se*.[25]  Matthews later admitted that he had continued to draft pleadings on behalf of Mark Brown after he formally withdrew as counsel, without disclosing his assistance to the Court.[26]  Such conduct, commonly referred to as "ghostwriting," concerned the Court.  On September 13, 2006, the Court entered an order setting a hearing on October 10, 2006, regarding Matthews's ghostwriting of pleadings, and ordering Matthews to appear.[27]  During the course of that hearing, the Court first became aware that some of the amounts Matthews claimed were due him under the Promissory Note may have been based on attorney fees for bankruptcy work in the 2003 Cases.

On November 17, 2006, the Court issued a Memorandum Opinion in which it made findings

---

[24] *Docket No. 20*, at 3.

[25] *See* Memorandum Opinion, *Docket No. 59*, slip op. at 5, 354 B.R. 535, 539 (Bankr. N.D. Okla. 2006).

[26] Response to Order Setting Hearing and Directing James S. Matthews, Jr. to Appear, *Docket No. 50, ¶ 1.*

[27] *Docket No. 43*.

of fact and conclusions of law with respect to Matthews's ghostwriting conduct.[28]   The Court concurrently issued a Judgment, which formally admonished Matthews for that conduct and ordered Matthews to make a full disclosure to the Court regarding any fees he had billed or payments he had accepted from the Browns for work related to the 2003 Cases.[29]   Matthews responded to the Court's order with two Responses,[30] a Stipulation of Facts,[31] and a Reply Brief.[32]   The Responses and Stipulation appear to give a full accounting of Matthews's transactions with Bill and Cynthia Brown and Mark Brown from the inception of the 2003 Cases to the present.

*Dismissal of the Mark Brown '06 Case*

Subsequent to Matthews's withdrawal as Mark Brown's counsel, the Mark Brown '06 Case was eventually dismissed on motion of the Standing Chapter 12 Trustee for this District.[33]   The Order Dismissing Case specifically retained jurisdiction "to conclude administration of the estate, including but not limited to the matters set forth in the Order Setting Hearing and Directing James S. Matthews, Jr. to Appear which was previously entered herein."[34]   Put another way, even though the case was dismissed, the Court expressly retained jurisdiction so that it could review Matthews's conduct.

---

[28]  *Docket No. 59*, 354 B.R. 535 (Bankr. N.D. Okla. 2006).

[29]  *Docket No. 60.*

[30]  Response, *Docket No. 72*; Response, *Docket No. 95.*

[31]  *Docket No. 94.*

[32]  *Docket No. 97.*

[33]  *Docket No. 44.*

[34]  *Id.  See also* Order Setting Hearing and Directing James S. Matthews, Jr. to Appear, *Docket No. 43.*

**Jurisdiction**

Matthews challenges the jurisdiction of this Court to review bankruptcy fees related to the 2003 Cases, as both cases have been dismissed and closed.[35]  The Court has jurisdiction over these bankruptcy cases pursuant to 28 U.S.C. § 1334(b).  Under that section, this Court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[36]  The issue of court review of attorney fees in a Chapter 12 case specifically arises under title 11 and constitutes a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).[37]  The Court's jurisdiction to review such fees is not dependent on whether the status of the case stands as

---

[35]  In addition, Matthews challenges the Court's jurisdiction to review fees for work on state litigation matters.  All disclosures ordered by the Court specifically related to either the 2003 Cases or the Mark Brown '06 Case.  *See* Judgment, *Docket No. 60.*  The Judgment, dated November 17, 2006, ordered Matthews to make disclosures as follows:

> IT IS FURTHER ORDERED that James S. Matthews Jr. shall within 14 days of the date of this Judgment disclose to the Court in writing whether any amounts purportedly due under the Promissory Note dated August 23, 2004, with an "effective date" of July 1, 2004, are for fees incurred in connection with Case No. 03-03650-M,  Case No. 03-03651-M, or this case.

> IT IS FURTHER ORDERED that James S. Matthews Jr. shall within 14 days of the date of this Judgment disclose whether he has been paid any sums from any other source in connection with the services he has provided to the debtors in Case No. 03-03650-M,  Case No. 03-03651-M, or this case.

*Id.*

[36]  28 U.S.C. § 1334(b).  Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C. § 157(a).  *See also* N.D. Okla. Local Civil Rule 84.1(a)(1).

[37]  *In re Henderson*, 360 B.R. 477, 483 (Bankr. D.S.C. 2006).  *See also Dery v. Cumberland Cas. & Sur. Co. (In re 5900 Assocs., Inc.)*, 468 F.3d 326, 330 (6th Cir. 2006) ("We find the case for retained jurisdiction to be clear. . . .a bankruptcy court's decision on attorney's fees is not a 'related proceeding[ ].'  It is part of the original proceeding.") (citation omitted).

open, closed, pending, or dismissed.[38]  Contrary to the characterization by Matthews, the Court is

not attempting to reach back or extend its jurisdiction through the Mark Brown '06 Case to the 2003

Cases.  This Court retains jurisdiction over Matthews's fees in each of the three referenced cases.

Matthews relies upon § 349(b)(3) which states that the dismissal of a case "revests the

property of the estate in the entity in which such property was vested immediately before the

commencement of the case under this title."[39]  From this, Matthews concludes that the Court's

jurisdiction over his fees dissolves after the dismissal of a case since the bankruptcy estate no longer

exists.  As authority for this position, Matthews cites to *In re Ragland*.[40]  In that case, the court

concluded that it did not have subject matter jurisdiction to order the trustee to deliver estate assets

to the debtor's attorney after dismissal of a case in the absence of specific retention of jurisdiction

to do so.  The matter *sub judice* does not deal with the allocation of estate assets, and the Court finds

the *Ragland* case and the argument raising § 349(b)(3) to be inapposite.[41]

---

[38]  *See In re 5900 Assocs., Inc.*, 468 F.3d at 330 ("The Bankruptcy Code assigns to courts a comprehensive duty to review fees in a particular case, and 11 U.S.C. § 330 is the sole mechanism by which fees may be enforced.  Dismissal of a case, or a private agreement between the debtor and its attorney, cannot abrogate the bankruptcy court's statutorily imposed duty of review.").  *See also In re Henderson*, 360 B.R. at 484 ("The fact that these cases are closed does not divest this Court of jurisdiction as jurisdiction is not dependant on the technicality of a case being 'open.' . . . Nothing in 11 U.S.C. § 1334 suggests that jurisdiction is extinguished upon the administrative closing of a case.  To hold otherwise, would allow Edwards and other attorneys to escape review of their performance based upon their very failure to provide adequate services to debtors which results in the dismissal of the case.") (citing cases); *In re Marin*, 256 B.R. 503, 507 (Bankr. D. Colo. 2000) ("The obligations under section 329 and Rule 2016 are not vitiated by the dismissal of the case.").

[39]  § 349(b)(3).

[40]  No. 05-18142, No. 05-31361, 2006 Bankr. LEXIS 1436 (Bankr. E.D. Pa. May 25, 2006).

[41]  *See In re Michels*, Nos. 03-00316, 01-01415, slip op. at 4 (Bankr. N.D. Iowa Dec. 15, 2003) (overruling objection to jurisdiction based on § 349(b)(3), where attorney challenged

## Conclusions of Law

Under the Bankruptcy Code, attorneys representing debtors in bankruptcy cases are required to disclose "all fee payments and agreements made after one year before the bankruptcy filing, for services in contemplation of, or in connection with, the bankruptcy filing."[42]  Such disclosure is independent of the source of the compensation.[43]  This disclosure is governed by § 329 and Rules 2016 and 2017.[44]  The disclosure requirements of § 329 are "mandatory, not permissive."[45]  "Section

---

court's jurisdiction to review debtor's attorney fees related to debtor's previous bankruptcy case).

[42] *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848 (10th Cir. BAP 1997).  *See also* § 329(a).

[43] § 329(a); *In re Greco,* 246 B.R. 226, 231–32 (Bankr. E.D. Pa. 2000) (citing *In re Prudhomme*, 43 F.3d 1000, 1004 (5th Cir. 1995) ("any payment to debtor's attorney, regardless of the source, is reviewable by the bankruptcy court"); *In re Walters,* 868 F.2d 665, 668 (4th Cir. 1989) ("We are of opinion that any payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment.")).

[44]  Those sections read as follows:

**11 U.S.C. § 329. Debtor's transactions with attorneys**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to–

(1) the estate, if the property transferred–

(A) would have been property of the estate; or

13

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

§ 329.

### Rule 2016. Compensation for Services Rendered and Reimbursement of Expenses

(a) Application for compensation or reimbursement

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.

(b) Disclosure of compensation paid or promised to attorney for debtor

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

14

329 is, by its express terms, applicable to payments made to counsel both before and after the bankruptcy is filed."[46]  Neither dismissal nor closing of a case relieves counsel from the obligations of disclosure under § 329.[47]  Rule 2016(b) makes clear that *whether or not an attorney seeks compensation under § 330*, a debtor's attorney has an ongoing obligation to file supplemental

---

Fed. R. Bankr. P. 2016.

### Rule 2017. Examination of Debtor's Transactions with Debtor's Attorney

(a) Payment or transfer to attorney before order for relief

On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

(b) Payment or transfer to attorney after order for relief

On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

Fed. R. Bankr. P. 2017.

[45] *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993); *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848; *In re Woodward*, 229 B.R. 468, 473 (Bankr. N.D. Okla. 1999).

[46] *In re Marin*, 256 B.R. 503, 507 (Bankr. D. Colo. 2000) (citing *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472 (6th Cir. 1996)).

[47] *Id.*; *Dery v. Cumberland Cas. & Sur. Co. (In re 5900 Assocs., Inc.)*, 468 F.3d 326, 330 (6th Cir. 2006); *In re Henderson*, 360 B.R. 477, 484 (Bankr. D.S.C. 2006).

disclosures of the information required under § 329.[48]

Whether or not an attorney representing a debtor seeks compensation under title 11, the Court must review any payments or agreements for compensation related to a case made after one year before the filing of the petition.[49]  If such payment or agreement is found to exceed the reasonable value of such services, the Court may cancel the agreement or disgorge any such payment to its source.[50]  The purpose of this review is "to prevent bankruptcy attorneys from extracting more than their fair share from prospective debtors willing to do whatever is necessary to obtain their counsel of choice and avoid unfavorable bankruptcy proceedings."[51]  Rule 2017 implements § 329 by directing court review of all bankruptcy-related fees, whether generated pre- or post-petition, whether the payment or transfer is made directly or indirectly, to determine whether those fees are excessive.[52]

Although the Court did not inquire about legal work on state-court litigation matters Matthews conducted for the Browns during the year before the date of filing the 2003 Cases or

---

[48]  *See In re Hackney*, 347 B.R. 432, 442 (Bankr. M.D. Fla. 2006) ("The duty to disclose extends not only to the initial payments received by the debtor's attorney but to all payments made to the attorney, either before or after the case is filed."); *In re Perrine*, No. 05-13979, __ B.R. __, 2007 WL 1186600, at *10 (Bankr. C.D. Cal. April 13, 2007) ("Rule 2016(b) imposes a continuing duty on debtor's counsel to supplement the original statement pursuant to § 329(a).").

[49]  § 329(a).  *See also In re Land*, 943 F.2d 1265, 1267 (10th Cir. 1991).

[50]  § 329(b).  *See also In re Land*, 943 F.2d at 1267.

[51]  *In re Inv. Bankers, Inc.*, 4 F.3d at 1565 (citing *In re NBI, Inc.*, 129 B.R. 212, 222 (Bankr. D. Colo. 1991)).

[52]  Fed. R. Bankr. P. 2017.  *See also* Advisory Committee Notes, Fed. R. Bankr. P. 2017 ("This rule, like § 60d of the Act and § 329 of the Code, is premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect the creditors of the estate and the debtor against overreaching by an officer of the court who is in a peculiarly advantageous position to impose on both the creditors and his client.").

thereafter, Matthews was obligated to disclose those transactions if they were "in contemplation of or in connection with," or "in any way related to" any of the Browns' bankruptcy cases.[53]  Courts apply a subjective test to determine whether attorney fee payments were made "in contemplation of" bankruptcy.[54]

> The "controlling question," as the Supreme Court explained in *Conrad, Rubin & Lesser,* "is with respect to the state of mind of the debtor and whether the thought of bankruptcy was the impelling cause of the transaction." 289 U.S. at 477.  If the payment or transfer was thus motivated, it may be re-examined and its reasonableness be determined. Undoubtedly, while the question thus relates to the debtor's motive, the nature of the services which he seeks and for which he pays may be taken into consideration as it may throw light upon his motive. It is not impossible that the services may have been so wholly separate from any exigency of bankruptcy as to indicate that the thought of bankruptcy was in no sense controlling. But, given the fact that the payment or transfer was in contemplation of bankruptcy, the inducement of the transaction affords, from the standpoint of the statute, sufficient ground for authorizing a summary inquiry into its reasonableness.[55]

The disclosure is necessary in order for the Court to evaluate the nature of the transactions and determine whether they are so connected with the bankruptcy case that Court review under Rule 2017 is required.[56]  Moreover, "[c]ounsel's fee revelations must be direct and comprehensive.  Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient."[57]  This is especially important here, where each of the bankruptcy cases

---

[53]  Such disclosure is required under § 329 and Rules 2016 and 2017.

[54]  *In re Perrine*, 2007 WL 1186600, at *5 (citing cases).

[55]  *Id.* at * 5–6.  *See also Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 477 (1933).

[56]  *Id.* at *5 ("Absent complete disclosure, the court is unable to make an informed judgment regarding the nature and amount of compensation paid or promised by the debtor for legal services in contemplation of bankruptcy.").

[57]  *In re Woodward*, 229 B.R. 468, 474 (Bankr. N.D. Okla. 1999) (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991)).

have been essentially a single-creditor fight with the Bank.[58]

The review conducted pursuant to § 329 and Rule 2017 is in conjunction with the provisions of the Code which require court review of attorney fees earned in a particular case.  Pursuant to §§ 327 and 1203, a Chapter 12 debtor in possession may, with the court's approval, hire an attorney to assist in carrying out its duties in bankruptcy.  Compensation of attorneys appointed under § 327 is governed by § 330, which grants the bankruptcy court discretion in the area of fee awards.[59] Section 330 establishes the exclusive means of allowing a claim for professional fees in a bankruptcy proceeding.[60]  The Court has an independent duty to review all requests for fees to

---

[58]  *In re Perrine*, 2007 WL 1186600, at *5  ("Services aimed at *prevention* of bankruptcy likewise necessarily contemplate bankruptcy, and compensation received for such services falls within the ambit of § 329(a).") (citing *Conrad, Rubin & Lesser*, 289 U.S. at 479).  Indeed, it is entirely possible that each of the bankruptcy cases represented no more than a continuation of the state-court litigation between the debtors and the Bank, albeit in an alternate forum.

[59]  The section provides in part that:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court *may award* to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–
>
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.

§ 330(a) (emphasis added).

[60]  *In re 5900 Assocs, Inc.*, 468 F.3d at 328.  While some courts have suggested that there may be circumstances when a debtor's attorney may receive payments without submitting a fee application under § 330 as long as those payments are disclosed under § 329, such is not the case here.  *See e.g.*, *In re Jeanes*, No. 01-00760, 2004 WL 1718093, *5 (Bankr. N.D. Iowa June 17, 2004).  In his affidavit seeking employment as attorney in both of the 2003 Cases, Matthews

determine their allowability under § 330 of the Bankruptcy Code, even if no party in interest objects to the amount of fees sought.[61]  As the Bankruptcy Appellate Panel for the Tenth Circuit made clear in *In re Gantz*, the plain language of § 330 means that "the court *may*, not must, award reasonable compensation," and that no fees are due an attorney for services related to a bankruptcy unless and until those fees are awarded under § 330.[62]  Absent court approval, neither the debtor nor the estate is liable for legal services related to a Chapter 12 bankruptcy.[63]  The information required for review under § 330 is solicited by Rule 2016, which "requires that an attorney seeking compensation file with the court an application setting forth a detailed statement of services rendered, time expended, expenses incurred and amounts requested."[64]

---

clearly stated that he understood "that no payment may be received without approval of this Court."  Case No. 03-03650-M, *Docket No. 14*; Case No. 03-03651-M, *Docket No. 23*.  The Court made this a formal condition of Matthews's employment in those cases, when it ordered "that James S. Matthews, is appointed as attorney for the debtor [and] the estate, at the rate of $125.00 per hour plus reasonable expenses, subject to review for reasonableness or other cause, prior to approval or payment."  Case No. 03-03650-M, *Docket No. 15*; Case No. 03-03651-M, *Docket No. 24*.

[61]  *In re Yates*, 217 B.R. 296, 300 (Bankr. N.D. Okla. 1998);  *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 840–45 (3d Cir. 1994);  *In re Greco*, 246 B.R. 226, 231 (Bankr. E.D. Pa. 2000) (obligation extends to compensation paid for debtors by third parties).

[62]  *In re Gantz*, 209 B.R. 999, 1002 (10th Cir. BAP 1997).

[63]  *Id.* at 1003; *In re 5900 Assocs., Inc.*, 468 F.3d at 330 ("Nor are we convinced by the trustee's assertion that 11 U.S.C. § 330 applies only to fees that will be drawn from the bankruptcy estate.  The language of the statute contains no such limitation.");  *In re Jeanes*, 2004 WL 1718093, at *2 ("Court approval under § 330(a) is what creates the liability, not the performance of the services.");  *In re Nilges*, 301 B.R. 321, 325 (Bankr. N.D. Iowa 2003) ("Attorney fees may be paid to a debtor's counsel only if approved by the Court."); *In re Wyant,* 217 B.R. 585, 588 (Bankr. D. Neb. 1998) (same).

[64]  *In re Gantz*, 209 B.R. at 1002.  *See also In re 5900 Assocs., Inc.*, 468 F.3d at 329 ("In order to receive payment under § 330, an attorney must comply with Federal Rule of Bankruptcy Procedure 2016, which requires professional service providers to submit to the court a detailed statement of services rendered and expenses incurred.").

*Disgorgement*

Disgorgement of fees as a result of inadequate disclosure by counsel is a matter left to the sound discretion of the bankruptcy court.  This Court has previously revealed its expectation that counsel make full disclosure of fees received or face disgorgement.[65]   The imposition of a disgorgement order should be "'commensurate with the egregiousness of the conduct' and will depend on the particular facts of each case."[66]  The Bankruptcy Appellate Panel for the Tenth Circuit has stated that "an attorney who fails to comply with the disclosure requirements of § 329 and Rule 2016(b) forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received."[67]  "The fact that the failure to properly disclose may have been the result of negligence or inadvertence does not vitiate the failure to disclose."[68]

*Matthews's Conduct*

Matthews's disclosures in the 2003 Cases indicate that he had agreed to accept $125 per hour to be paid by the debtors in each case.[69]  The applications to employ Matthews as debtors' attorney

---

[65]  *See In re Woodward*, 229 B.R. 468, 473 (Bankr. N.D. Okla. 1999).

[66]  *In re Hackney*, 347 B.R. 432, 443 (Bankr. M.D. Fla. 2006) (citing *Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 479–80 (6th Cir. 1996)).  *See also In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 846 (10th Cir. BAP 1997).

[67]  *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848–49 (citing *In re Inv. Bankers, Inc.*, 4 F.3d at 1566).  *See also In re Henderson*, 360 B.R. 477, 486 (Bankr. D.S.C. 2006); *In re Marin*, 256 B.R. 503, 507 (Bankr. D. Colo. 2000) ("An attorney who extracts payments from debtors other than pursuant to proper disclosure, or to allowance under section 330, stands in violation of the provisions of the bankruptcy Code, and may properly be stripped of all fees.") (citing *Quiat v. Berger (In re Vann)*, 986 F.2d 1431, 1993 WL 53556 (10th Cir. 1993) (unpublished opinion), *aff'g*, 136 B.R. 863 (D. Colo. 1992)).

[68]  *In re Woodward*, 229 B.R. at 473 (internal citations omitted).  *Accord In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848.

[69]  Case No. 03-03650-M, *Docket No. 2*; Case No. 03-03651-M, *Docket No. 2*.

in the 2003 Cases disclose another $3,000 paid to Matthews for non-bankruptcy-related litigation services prior to the filing of the petitions.[70]   The Court has no reason to believe that these disclosures were not complete and forthright at the time they were made.

After the 2003 Cases were dismissed, Matthews never filed any type of application under § 330 to allow the Court to review his fees.  In each of those cases, Matthews's compensation was expressly "subject to review for reasonableness or other cause, prior to approval or payment."[71] Therefore, attorney fees were never due or owing from the Browns to Matthews for bankruptcy-related legal services stemming from the 2003 Cases.  Despite having no enforceable liability to Matthews for bankruptcy-related services, the Browns were presented with invoices for those services.  Matthews even went so far as to combine the outstanding balance of presented invoices into the Promissory Note and to take a security interest in the Browns' crops to secure payment on that note.[72]

At no time did Matthews have an enforceable claim for bankruptcy-related attorney fees against the Browns, and the presentation of invoices to the Browns suggesting otherwise is a violation of §§ 327 and 330.  In *In re Land*, the Court of Appeals for the Tenth Circuit affirmed the disgorgement of attorney fees, where an attorney never obtained the bankruptcy court's approval

---

[70] The record reveals that Matthews received $2,000 from Bill and Cynthia Brown and $1,000 from Mark Brown.  Case No. 03-03650-M, *Docket No. 14*; Case No. 03-03651-M, *Docket No. 23.*

[71] Case No. 03-03650-M, *Docket No. 15*; Case No. 03-03651-M, *Docket No. 24.*

[72] Stipulation of Facts, *Docket No. 94*, *¶ 14, 15.  See also* Response, *Docket No. 72* ("The work and costs which produced the note balance was primarily the product of work and costs arising from the two preceding bankruptcies.").  The fact that the crops may have also served as security for other debt does not excuse Matthews's conduct in this regard.

of his employment.[73]  While Matthews did seek and obtain approval of his employment under § 327,

he never sought nor obtained approval of his fees under § 330.  As the court stated in *In re Land*,

"[r]eturn of compensation received is an appropriate remedy where the debtor or the attorney fails

to obtain the bankruptcy court's approval of the attorney's employment."[74]  This applies equally to

an attorney that fails to seek the court's approval of fees.[75]  Although Matthews may have done

meritorious work on behalf of the Browns while acting as their attorney in the 2003 Cases, his

failure to seek approval of his fees in those cases is a serious violation of § 330 that warrants

disgorgement.[76]  Any amount collected by Matthews in these cases must be returned to the debtors

and remaining amounts allegedly due under the Promissory Note must be cancelled.

From the records before the Court, since June 30, 2003 (the date of filing of the 2003 Cases),

it appears that Matthews presented invoices to the Browns for bankruptcy-related services totaling

approximately $32,236.89,[77] and received payments of approximately $11,157.71.[78]  The invoices

were never presented to the Court for review, and  none of the payments were disclosed to the Court.

Matthews had an ongoing obligation under § 329(a), Rule 2016(b), and Rule 2017(b) to disclose

---

[73]  *In re Land*, 943 F.2d 1265 (10th Cir. 1991).

[74]  *Id.* at 1267.

[75]  *See In re Schroeder*, 120 B.R. 527, 529 (Bankr. D. Neb. 1990) ("First, it is contrary to Bankruptcy Code § 330 and Bankruptcy Rules 2016 and 2017 for an attorney to receive a post-petition payment from the debtor without leave of the court.  If an attorney receives a post-petition payment without leave of the court, the funds may be disgorged and disallowed.") (citing cases).

[76]  *Id.*

[77]  Response, *Docket No. 95-2*, Exhibit A.

[78]  Response, *Docket No. 72.*

these payments to the Court.  Under Rule 2016(b), Matthews's supplemental disclosure should have occurred within 15 days of receipt of any additional payment.  His failure to so disclose is likewise grounds to disgorge all payments received by Matthews from the Browns in conjunction with these cases.[79]

Matthews takes great pains to distinguish his conduct from previous cases.  Matthews emphasizes that 1) any attorney fees paid with respect to the Mark Brown '06 Case were actually paid by Bill Brown, a third party to that case; 2) the bulk of payments occurred outside one year prior to the filing of the Mark Brown '06 Case; 3) all fees paid by Bill Brown were paid "voluntarily;" and 4) fees paid did not come from estate assets, since the 2003 Cases were dismissed before the payments were made.[80]

The Court finds no relevance in the fact that Bill Brown is a third party to the Mark Brown '06 Case.  The Court has jurisdiction and authority to review payments to professionals for bankruptcy-related services in each of the three captioned cases.  The Court need not tether Bill Brown to the Mark Brown '06 Case in order to review invoices presented to or payments made by Bill Brown to Matthews.[81]  Given the absence of any evidence to the contrary, all payments made

---

[79]  *In re Perrine*, No. 05-13979, __ B.R. __, 2007 WL 1186600, at *5 (Bankr. C.D. Cal. April 13, 2007).

[80]  *See* Response, *Docket No. 95.*  Matthews also notes that some fees billed to the Browns were for non-bankruptcy-related state-court litigation. *See supra* note 14.  The Court notes that in his responses to the November 17, 2006, Judgment, Matthews has clung to the singular argument that this Court does not have jurisdiction to review his fees stemming from the 2003 Cases.  Matthews presented no legal argument to the Court regarding the merits of his right to receive those fees.

[81]  While some courts have found that compensation for attorney fees paid by a non-debtor third party is not subject to the requirements of § 330, *see e.g., In re Jeanes*, No. 01-00760, 2004 WL 1718093, *4 (Bankr. N.D. Iowa June 17, 2004), no non-debtor third-party payor is present in these cases, and therefore the Court does not reach that issue.

by Bill Brown will be treated as having been made on his own behalf to cover services billed by Matthews in the Bill Brown Case.[82]   The only other payment at issue is $460 from Mark Brown made in conjunction with the Mark Brown '06 Case.[83]

Even if the payments by Bill Brown were made on behalf of Mark Brown, that would not change the result here.  The obligation of the Court to review fees is not eliminated when those fees are paid from a source other than the estate.[84]   The court in *Gantz* stated that under § 330, "fees are [either] disallowed, allowed as an administrative expense, or allowed but must be paid by the debtor directly and not from the estate."[85]   The fact that payments to debtor's counsel may come from a source other than the debtor or the estate does not absolve the attorney from disclosure under § 329.[86]   Such failure to disclose is alone grounds to deny Matthews attorney fees in these cases and

---

[82]   Matthews represents that the payments from Bill Brown were made for invoices in both the Bill Brown and Mark Brown '03 Cases.  Response, *Docket No. 72*, Question 2(a). Matthews has presented no evidence on how these payments were allocated among the various invoices.  Nor does the Court find such evidence would be relevant here, since all bankruptcy-related payments were required to be disclosed by Matthews in both cases, regardless of their source.

[83]   Response, *Docket No. 72*.  *See also supra* note 17.

[84]   *In re Greco*, 246 B.R. 226, 230–31 (Bankr. E.D. Pa. 2000); *In re Jeanes*, 2004 WL 1718093, at *3.

[85]   *In re Gantz*, 209 B.R. 999, 1003 (10th Cir. BAP 1997).  *See also In re Nilges*, 301 B.R. 321, 325 (Bankr. N.D. Iowa 2003); *In re Michels*, 2004 WL 1718074, at *4 (Bankr. N.D. Iowa May 10, 2004).

[86]   *Dery v. Cumberland Cas. & Sur. Co. (In re 5900 Assocs., Inc.)*, 468 F.3d 326, 330 (6th Cir. 2006) ("11 U.S.C. § 329 permits the bankruptcy court to order disgorgement of fees even when the fees were not paid from the bankruptcy estate.") (citing *Henderson v. Kisseberth (In re Kisseberth),* 273 F.3d 714, 718-19 (6th Cir.2001)); *In re Greco*, 246 B.R. at 231 ("The court is obliged to ascertain the reasonableness of the compensation paid for debtors by third parties, and in fact has the duty to do so, even if no party objects.") (citing 3 Collier on Bankruptcy, ¶ 329.04[i][1][a], at 329-16 to -17; 9 Collier on Bankruptcy, ¶ 2017.11, at 2017-9 to -10; *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 840–45 (3d Cir. 1994)).

to disgorge fees already paid.[87]

Matthews points out that most of the payments he received from Bill Brown were made more than one year prior to the filing of the Mark Brown '06 Case.  Matthews asserts that this removes the payments from the Court's "arising under" jurisdiction of § 329(a).  As discussed *supra*, the Court's jurisdiction over those payments is not based on the Mark Brown '06 Case, but on the 2003 Cases, filed on June 30, 2003.[88]  The payments of concern to this Court occurred well after the 2003 Cases were filed, and thus fall squarely under § 329(a) and should have been disclosed to the Court.

Despite the fact that Matthews presented the Browns with invoices of over $32,000 and accepted the Promissory Note secured by the Browns' crops, Matthews characterizes payments on the note as an "entirely voluntary arrangement not challenged by the Debtor," and as "more analogous to a gift than extraction."[89]  Matthews's attempt to portray the Browns' payments as voluntary cuts directly against the policy behind the Code's framework for review and approval of debtor's attorney fees.  The statutory provisions regarding the disclosure and approval of bankruptcy fees

> enable the Bankruptcy Court to carry out its traditional role of scrutinizing carefully the compensation paid to the debtor's attorney.  Courts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and

---

[87] *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993) ("Accordingly, an attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor, and a court may order an attorney *sua sponte* to disgorge funds already paid to the attorney.") (citations omitted); *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848 (10th Cir. BAP 1997).

[88] *See supra* text accompanying notes 36–38.

[89] Reply, *Docket No. 97*, at 5.

25

therefore will be reluctant to object to the fees of the attorney.  The purpose of this process is to prevent overreaching by an attorney and provide protection for creditors.[90]

Legislative history also provides that "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny."[91]  The Code provides specific protections for the debtor and the estate, all of which were circumvented by Matthews in these cases.[92]  The Court will not allow Matthews's characterization of the payments as voluntary or gifts to cloud the true nature of the transactions—which were undisclosed payments for unapproved fees related to a bankruptcy case.

Matthews also analogizes this situation to § 524(f), which allows a debtor to voluntarily repay any debt.  As the court in *In re Gantz* made clear, disallowed or unapproved attorney fees are not analogous to a discharged debt.[93]  As that court noted, "[a]bsent court approval, neither the debtor nor the estate was ever liable for [the disallowed attorney fees].  Any argument over whether the fee was discharged is a red herring as there was no debt to discharge."[94]  Because Matthews held the Promissory Note and a security interest in the Browns' crops to secure its payment, the Court

---

[90]  *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848.

[91]  *In re Marin*, 256 B.R. 503, 506 (Bankr. D. Colo. 2000) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 329 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6285).  *See also In re Brandenburger*, 145 B.R. 624, 627 (Bankr. D.S.D. 1992).

[92]  *See In re Schroeder*, 120 B.R. 527, 529 (Bankr. D. Neb. 1990) ("Receiving post-petition payments without leave of the court circumvents carefully drafted statutes and rules governing the retention and compensation of professionals in connection with bankruptcy cases.").

[93]   *In re Gantz*, 209 B.R. at 1003.

[94]  *Id.* (footnote omitted).

26

cannot accept Matthews's characterization of the payments from Bill Brown as voluntary or in the nature of a gift.  Instead, Matthews used encumbrances of personal property in an attempt to ensure collection of claims that were legally unenforceable.

Lastly, the Court rejects Matthews's argument that it should only exercise jurisdiction when payments to a debtor's attorney are made directly from a bankruptcy estate.  Both § 329(b), which directs where payments should be returned when circumstances warrant, and legislative history make it clear that Court review is essential to protect a multitude of interests, which include debtors, creditors, the estate, and any non-debtor payors, as well as the integrity of the bankruptcy system itself.  Given the plain language of § 329(a) and Rule 2016(b), the Court also rejects the suggestion that regulation of the post-dismissal attorney-client relationship is best left to State norms of professional responsibility.[95]  The Court can and will perform its statutory duty to review debtor's attorney fees when properly submitted pursuant to §§ 329 and 330.  Failure or refusal to disclose or submit such fees to the Court for review will not be tolerated and may result in disgorgement or other sanction.[96]

---

[95]  *See In re Henderson*, 360 B.R. 477, 484 (Bankr. D.S.C. 2006).

[96]  *In re Inv. Bankers, Inc.*, 4 F.3d at 1565; *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848–49; *In re Woodward*, 229 B.R. 468, 473 (Bankr. N.D. Okla. 1999).

**Conclusion**

Matthews received a total of $10,697.08 from Bill Brown that he failed to disclose to the Court prior to the initiation of these proceedings.  These payments were made in response to approximately $32,236.89 in invoices for bankruptcy-related work in the 2003 Cases.[97]  Matthews's failure to seek approval of these invoices pursuant to § 330, and to disclose the payments under § 329, warrants disgorgement of all payments made by Bill Brown in relation to the 2003 Cases, and denial of all fees associated with the 2003 Cases.[98]

In addition, the Court finds that the Promissory Note issued by the Browns to Matthews was "primarily the product of work and costs arising from" the 2003 Cases.[99]  On this basis, the entire amount of the Promissory Note falls within the Court's jurisdiction and should have been disclosed to the Court as an agreement for payment pursuant to § 329(a).  Because Matthews failed to disclose that agreement, the Court finds that he may not enforce or collect funds pursuant to the Promissory

---

[97]  Matthews did not provide the Court with an allocation of payments into bankruptcy and non-bankruptcy components. Because it is Matthews's burden to show otherwise, the Court will assume that all payments were made in response to bankruptcy-related matters.

[98]  *In re Inv. Bankers, Inc*, 4 F.3d at 1565; *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848–49.  *See also In re Perrine*, No. 05-13979, __ B.R. __, 2007 WL 1186600, at *10 (Bankr. C.D. Cal. April 13, 2007) ("An attorney who neglects to satisfy the disclosure requirements of § 329(a) and Rule 2016(b), whether willfully or inadvertently, forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received."); *In re Schroeder*, 120 B.R. at 529.

[99]  Response, *Docket No. 72.*  Based on the records provided by Matthews, the Court is unable to discern what amount due under the Promissory Note is allocated to bankruptcy as opposed to non-bankruptcy state litigation matters.  In the absence of such an allocation, the burden for such lying with Matthews, the Court will treat all amounts due under the Promissory Note as being related to bankruptcy matters.

Note.[100]

Matthews also received $460 from Mark Brown in conjunction with the Mark Brown '06 Case. While the Court believes that receipt of these funds should have been disclosed to the Court pursuant to §329(a) and Rule 2017(a), the Court notes that the entire amount paid by Mark Brown was consumed by the filing fee of $239 and a fee for removal of a state court matter of $250. Therefore the Court will not disturb Matthews's post-petition receipt of funds from Mark Brown.

A separate judgment consistent with this memorandum opinion is entered concurrently herewith.

Dated this 29th day of June, 2007.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

---

[100] *See supra* note 15 and accompanying text. Because a statement has been filed that terminates the perfected security interest in the crops of the Browns, the Court will take no further action regarding the security agreement.

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2007, I mailed by first-class United States mail a true and correct copy of the foregoing Memorandum Opinion to the parties listed below:

Mark Brown
767 West Maple
Fairfax, OK 74637

Bill Brown
50226 E. 39th Road
Ralston, OK 74650

Cynthia Brown
50226 E. 39th Road
Ralston, OK 74650

*Judy Johnson*

4892.7

30